IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENN SEGAL,  :  | |
|     Plaintiff,  : | |
| : | CIVIL ACTION |
| v.  : | |
| : | NO. 13-7493 |
| SAMUEL ZIELENIEC, et al.,  : | |
|     Defendants.  : | |

<u>**MEMORANDUM OPINION**</u>

**RUFE, J.**                                    **JUNE 16, 2014**

  Before the Court is Defendants' Motion to Dismiss the Complaint for lack of personal jurisdiction and failure to state a claim. For the reasons that follow, the Motion will be granted with respect to Henry Zieleniec and denied with respect to Samuel Zieleniec.

**I.  Background**

  The Complaint alleges that between June and October 2007, Plaintiff Glenn Segal entered into four trust agreements with Defendant Samuel Zieleniec ("Samuel"). Plaintiff was the beneficiary, and Samuel was the trustee. The trusts were set up to facilitate high-interest loans (16% per annum) to owners of real property in Israel. Plaintiff wired money from his bank account in Pennsylvania to the trusts and received some payments back from the trusts, but nowhere near the expected 16% return. With respect to one trust, Plaintiff received no payments, and after November 20, 2012, although amounts were outstanding on all trusts, Plaintiff received no further payments. After problems arose with the trusts, Samuel ceased communications with Plaintiff, and Samuel's father Defendant Henry Zieleniec ("Henry") began to administer the trusts as co-trustee.

  Defendants have moved to dismiss the complaint for want of personal jurisdiction and for failure to state a claim on which relief may be granted. For the reasons that follow, the Court

holds that it has personal jurisdiction over Samuel but not Henry and that Samuel's motion to dismiss must be denied without prejudice on the grounds that the Court cannot adjudicate the dispute without the benefit of the parties' choice-of-law analysis.

## II.     Jurisdiction

The Court has subject-matter jurisdiction: Plaintiff is a Pennsylvania resident; Defendants are Canadian; and the amount in controversy is $1,800,000. Defendants argue, however, that the Court lacks general and specific personal jurisdiction over them. Plaintiff's response focuses on specific jurisdiction. Pennsylvania's long-arm statute permits its courts to exercise jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States."[1]

The due process clause of the Fourteenth Amendment limits courts' power to adjudicate disputes over non-resident defendants. In brief, a court may adjudicate a dispute if the defendant has "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[2] The inquiry requires two analyses, first whether the contacts between the party and the forum with respect to the dispute are sufficient to allow the court to entertain the suit, and a second, discretionary, step, whether actually adjudicating the dispute is fair to the defendant.[3]

A party has "minimum contacts" with the forum when "the defendant has purposely directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."[4] In order to be subjected to a court's jurisdiction, "[t]he

---

[1] 42 Pa. Cons. Stat. Ann. § 5322(b).

[2] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

[3] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1222 (3d Cir. 1992) (explaining two-step nature of analysis).

[4] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations and internal quotation marks omitted); *Mellon Bank*, 960 F.2d at 1222 (emphasizing that *Burger King* is lead precedent in interstate contracts

defendant must engage in some affirmative act 'by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"[5] The Supreme Court has underscored "that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities. . . . [W]here individuals purposely derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."[6]

After determining whether the defendant has the requisite minimum contacts, a court may nevertheless decline to exercise jurisdiction if the "fairness factors" of *World-Wide Volkswagen v. Woodson* so counsel.[7] "These factors include: 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies,"[8] and, "in the international context, the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction."[9]

---

cases);  *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (applying *Burger King*'s analysis to international contract context).

[5] *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) (citation omitted)).

[6] *Burger King*, 471 U.S. at 473–74.

[7] 444 U.S. 286 (1980). *See also Mellon Bank*, 960 F.2d at 1222 (concluding, based on *Burger King*, that the *World-Wide Volkswagen* factors are discretionary).

[8] *Mellon Bank*, 960 F.2d at 1222 (quoting *Burger King*, 471 U.S. at 477).

[9] *Daimler AG v. Bauman*, 134 S. Ct. 746, 762 n.20 (2014) (citation and internal quotation marks omitted, emphasis removed). Although the cases summarized in this Memorandum Opinion deal with interstate rather than international parties, the same principles apply whether defendants are from another state or another country. *Id* at 753.

"Questions of specific jurisdiction are properly tied to the particular claims asserted."[10] Plaintiff has alleged both breach of contract and several intentional torts. Therefore this Court will address its personal jurisdiction over the defendants with respect to the claims separately. The Third Circuit has directed that "in contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach. Parties who reach out beyond their state and create continuing relationships and obligations with citizens of another state are subject to the regulations of their activity in that undertaking. Courts are not reluctant to find personal jurisdiction in such instances."[11]

Nevertheless, although in certain circumstances one "contract may provide a basis for the exercise of personal jurisdiction that meets due process standards . . . , a contract alone does not automatically establish sufficient minimum contacts in the other party's home forum. Courts must also look to prior negotiations and contemplated future consequences. Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."[12]

In tort cases, there is similarly a requirement that the defendant's activity be related to the forum and the litigation. The degree of relatedness required has not proved amenable to concise or precise enumeration. Before the Third Circuit's ruling in *O'Connor v. Sandy Lane Hotel Co.*,[13] courts vacillated among whether the proper inquiry is that the plaintiff's injury would not have occurred "but for" the defendant's contacts with the forum, that the contact was the

---

[10] *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).

[11] *Id.* (citations, internal quotation marks, and alterations omitted).

[12] *Grand Entm't Grp.*, 988 F.2d at 482 (citations, internal quotation marks, and alterations omitted).

[13] 496 F.3d 312, 323 (3d Cir. 2007).

proximate cause of the injury, or whether to adopt a complex sliding-scale approach. *O'Connor* held:

> that specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test. . . . [T]here is no specific rule susceptible to mechanical application in every case. But in the course of this necessarily fact-sensitive inquiry, the analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests. With each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations. Specific jurisdiction is the cost of enjoying the benefits. The relatedness requirement's function is to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations. The causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.[14]

Finally, a separate theory of personal jurisdiction is available to victims of intentional torts, namely the "more demanding relatedness requirement of the effects test."[15] The "effects test" stems from *Calder v. Jones*, which held that intentional tortious actions aimed at a forum state and causing injury within that state can subject a tortfeasor to jurisdiction in the target state.[16] The Third Circuit has read *Calder* "conservative[ly]," holding "that the *Calder* 'effects test' requires the plaintiff to show the following: (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity . . . . [I]n order to make out the third prong of this test, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused

---

[14] *Id.*

[15] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 99 (3d Cir. 2004).

[16] 465 U.S. 783, 789 (1984).

5

by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." [17]

Because the personal jurisdiction inquiry is highly fact-specific, some of the cases in this area can be difficult to reconcile.[18] Notwithstanding this difficulty, the determinative analysis tends to be whether there was "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[19] In evaluating a motion to dismiss for personal jurisdiction, the Court must take the plaintiff's allegations as true and draw all reasonable inferences in favor of the plaintiff, but the plaintiff must support his allegations with something more than a bare pleading, like a sworn declaration or affidavit and other competent evidence.[20]

    *A.    Defendants' Contacts*

---

[17] *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998) (citations, internal quotation marks, and footnote omitted).

[18] *Compare Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (personal jurisdiction lay where defendants solicited plaintiff's business, knew plaintiff was Pennsylvanian, and payment was due to Pennsylvania address) *with Novacare, Inc. v. Strategic Theracare Alliance*, No. 98-cv-6205, 1999 WL 259848, at *5 (E.D. Pa. Apr. 30, 1999) (no personal jurisdiction as to defendants "as a whole," even though as to various defendants agreements were negotiated and executed by defendants in Pennsylvania, communications were sent to Pennsylvania, defendants' agent travelled to Pennsylvania to discuss performance of contract, agent executed and delivered to Pennsylvanian plaintiff guaranties with forum selection clause naming Pennsylvania, defendants knew plaintiff was Pennsylvanian, defendants directed mail and phone conversations to plaintiff in Pennsylvania).

[19] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). *See also Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co.*, 75 F.3d 147, 152–53 (3d Cir. 1996) ("[T]his is not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract. *Compare Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217 (3d Cir. 1992). Nor is this a case where the defendant sent any payments to the plaintiff in the forum state, *compare North Penn Gas v. Corning Natural Gas,* 897 F.2d 687, 690–91 (3d Cir. 1990), or where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state. *Compare Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 700 (3d Cir. 1990) (after selling a boat to New Jersey buyer, defendant sent written correspondence to the buyer's New Jersey residence, delivered the boat to New Jersey, and attempted to repair the boat in New Jersey).").

[20] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004).

6

Samuel initially solicited Plaintiff's business by telephone, knowing that Plaintiff lived in Pennsylvania,[21] and they subsequently engaged in a long-term course of dealing.[22] Samuel prepared all the trust agreements that he and Plaintiff entered into and faxed them to Plaintiff's residence in Pennsylvania.[23] Samuel and Plaintiff communicated frequently by telephone and email, and Plaintiff continued to communicate with Henry by telephone and email after Samuel abandoned his duties as trustee. According to the Complaint, Defendants were the trustees of all four trusts, which were formed in part in order to receive (and all did receive) wire transfers of significant funds, including fees totaling 2% of the loan amounts payable to the trustees, from Plaintiff's bank in Philadelphia.[24] The trusts also created ongoing obligations of the trustees, specifically "[t]o exercise all rights which an absolute owner of the same property would have, upon and subject to instructions of" Plaintiff.[25] Although Schedule A to the trusts contemplates that the term of the loan would be six months, this period could be extended, and the trusts would not terminate until "the repayment of the loan and transfer of the Property with any accumulated interest to [Plaintiff] or his estate."[26]

Defendants, Canadian residents, emphasize that they have hardly ever been to Pennsylvania and that it did not matter to them where Plaintiff lived. They also stress that all communication between Plaintiff and Defendants took place via email and telephone while

---

[21] Decl. of Samuel Zieleniec at ¶ 30.

[22] Samuel argues that Plaintiff in fact sought out more lending opportunities with Samuel after Samuel had solicited Plaintiff's participation in other trusts that are not the subject of this lawsuit. Although it is relevant that Plaintiff sought out further investment opportunities with Samuel, a fair inference from the Complaint and declarations relevant to this motion is that Samuel perpetrated a "bait and switch" scheme, allowing Plaintiff to recoup significant sums from his initial investment before foisting bad loans upon him.

[23] Decl. of Glenn Segal at ¶ 14.

[24] *See also id.* at ¶ 15.

[25] Am. Compl. Exh. A at ¶ 6(b).

[26] *Id.* at ¶ 6(a)

Defendants resided in Israel.[27] They further contend that any payments made to Plaintiff were made to his bank in New Jersey.

Because "the specific jurisdiction determination is both claim-specific and defendant-specific,"[28] this Court will analyze its jurisdiction separately with respect to Samuel and Henry and with respect to the kinds of claims Plaintiff alleges.

### 1. Breach of Contract Against Samuel (Count I)

Plaintiff claims that Samuel's mismanagement of the trust agreement breached the agreement. As noted above, Samuel allegedly solicited Plaintiff's investment in the course of dealing of which the trusts at issue were a part with the knowledge that Plaintiff was in Pennsylvania. The contracts that gave rise to the trusts were not merely one-off purchases of consumer goods by a "passive buyer."[29] Rather, they were agreements that imposed ongoing fiduciary obligations on Samuel's part to manage the property of the trusts. By accepting a management fee as part of a sum wired from a Pennsylvania bank, Samuel further purposely availed himself of the laws of this forum. The Court concludes that Samuel's contacts with respect to the breach of contract claim are sufficient to support personal jurisdiction.

### 2. Torts and UTPCPL Claims Against Samuel (Counts II–IX)

Plaintiff claims that Samuel committed fraud by misleading Plaintiff to believe that he would enjoy a 16% return on his investment when, in fact, the trusts were part of a Ponzi scheme. Plaintiff also alleges that certain acts Samuel took in managing the trusts were

---

[27] The Court does not attach a great deal of significance to Plaintiff's 215 area code; although a Pennsylvania resident would likely know that the owner of a phone with a 215 area code resides or at least has resided in Pennsylvania, there is no reason to think that a Canadian would immediately associate the code with this Commonwealth. In addition, a person may live in one state but maintain a mobile phone number assigned in another state.

[28] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 (3d Cir. 2004) (Scirica, C.J., concurring in part and dissenting in part).

[29] *Cf. Vetrotex*, 75 F.3d at 152.

fraudulent, specifically misstating the financial condition of the trusts. He further alleges that Samuel's mismanagement of the trusts breached the fiduciary and other common-law duties that ran to Plaintiff by virtue of the trusts' existence.

Soliciting Plaintiff to enter into the trust agreements entailed purposeful availment of Pennsylvania laws and created an ongoing relationship between Plaintiff and Samuel. Samuel's purpose in entering into the trust agreements was to receive fees for managing the trusts, which he did receive. The trust agreement created the duties that Samuel allegedly breached, and he created the agreement by availing himself of Pennsylvania's laws that facilitated the transfer of Plaintiff's funds to him. Although some of the specific allegedly bad acts in managing the trusts were not, in isolation, directly connected to Pennsylvania, they are all closely related to performing agreements that existed because of purposeful availment of Pennsylvania's laws. Samuel's solicitation and the ongoing nature of the relationship with Plaintiff are intimately connected enough with his alleged wrongdoing that it would "keep the quid pro quo proportional" to require him, as a cost of entering into the agreements with Plaintiff, to be subject to personal jurisdiction.[30] Therefore, the Court concludes that Samuel's contacts with respect to these claims are sufficient to support personal jurisdiction.

    B.    *Fairness Factors*

Because the minimum contacts test is met, this Court may evaluate the fairness factors of *World-Wide Volkswagen*. To reiterate, "[t]hese factors include: 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient

---

[30] *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998).

resolution of controversies,"[31] and, "in the international context, the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction."[32]

### 1. Burden on Samuel

Despite advances in modern communication and transportation, the Court acknowledges that participating in this litigation would cause some burden to a Canadian resident. This factor weighs slightly in Samuel's favor.

### 2. Pennsylvania's Interest

Plaintiff is a resident of Pennsylvania, and he was allegedly injured here. States that are the locus of an injury typically have a strong interest in redressing harms, and therefore, this factor weighs, not heavily, but nonetheless in Plaintiff's favor.

### 3. Plaintiff's Interest in Convenient and Effective Relief

Clearly, it is more convenient for Plaintiff—who chose this forum and lives in Pennsylvania—to litigate here than in Canada (or perhaps Israel, where Defendants argue witnesses and discoverable evidence are located). The Court does not doubt that those fora could provide him effective relief if it is warranted, but this factor does counterbalance the burden on Samuel of haling him to Pennsylvania.

### 4. Interstate Judicial System's Interest in Efficiency

The money that is subject of this dispute is in Canada, together with the defendants, while the real property owned by the people who were meant to obtain loans is in Israel. Nevertheless, the trust property is money, and it was sent by a Pennsylvania bank. Proof that it was or was not

---

[31] *Mellon Bank*, 960 F.2d at 1222 (quoting *Burger King*, 471 U.S. at 477).

[32] *Daimler*, 134 S. Ct. at 762 n.20 (2014) (internal quotation marks omitted).

used for its intended purpose can likely be made with documents, and since any forum will be inconvenient for one party, this factor does not weigh in any party's favor.

### 5. International Interests

Samuel has not pointed to any conflict in policies among the United States, Canada, and Israel, that would counsel against exercising jurisdiction, and the Court perceives none. The parties dispute fiduciary obligations and fraud in the creation and execution of a trust instrument. The Court is confident that all countries involved support the policies of holding wrongdoers accountable and shielding the wrongly accused from liability. And, as in most cases, "the potential clash of the forum's law with the fundamental substantive social policies of another [nation] may be accommodated through application of the forum's choice-of-law rules."[33]

### 6. Summary of Fairness Factors

Although it may be somewhat inconvenient to Samuel to litigate here, the same would be true for Plaintiff if the case must be brought elsewhere. The Court is not persuaded that the burden on Samuel is so great as to offend traditional notions of fair play and substantial justice, and the Due Process clause will not bar this suit against him.

### C. All Claims Against Henry

#### 1. Traditional Minimum Contacts Analysis

Henry's relationship with Plaintiff started only after Samuel's had broken down. He was allegedly brought in as trustee, but there is no particular reason in the Complaint or the declarations in support of the parties' briefs with respect to personal jurisdiction to infer that Henry purposely availed himself of Pennsylvania laws. Although he sent some electronic and telephonic communications to Plaintiff, these alone do not support personal jurisdiction, as

---

[33] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

basing jurisdiction on occasional emails and telephone calls does not comport with fair play and substantial justice.[34] Unlike Samuel, Henry did not solicit Plaintiff's business and was not trustee when the trusts received Plaintiff's money. Henry further asserts that he received no compensation from the trusts.[35] These distinguishing factors mean that this Court cannot exercise jurisdiction over Henry consistent with the Due Process clause.

### 2. "Effects Test"

The effects test requires a fairly concrete relationship between defendant's intentional tort and the forum state.[36] Rather than directing his conduct at Pennsylvania, however, Henry allegedly mishandled trust property in Israel. Plaintiff presents no evidence that Henry's actions targeted Pennsylvania in the way that the libelous articles of *Calder v. Jones* were literally hand delivered to the relevant forum. The Third Circuit has held that "[i]n the typical case, [the effects test] will require some type of 'entry' into the forum state by the defendant."[37] No such entry occurred here, and Henry's connection to Pennsylvania is simply too attenuated to subject him to this Court's jurisdiction.

## III. Merits

As the Court has jurisdiction over Samuel, it turns to his argument that Plaintiff's claim must be dismissed pursuant to Rule 12(b)(6). The Complaint sounds in Pennsylvania law, and Samuel relies on Pennsylvania law in support of his motion. However, the trusts that are the subject of this lawsuit provide that they "shall be governed by and construed in accordance with the laws of the State of Israel." Based on the current record, the Court cannot determine the

---

[34] *IMO Indus.*, 155 F.3d at 259 n.3 (3d Cir. 1998); *Vetrotex*, 75 F.3d at 149, 152.

[35] Decl. of Henry Zieleniec at ¶ 9.

[36] *Miller Yacht*, 384 F.3d at 99.

[37] *IMO Indus.*, 155 F.3d at 265.

proper law to apply with respect to Plaintiff's several counts. Therefore, the motions will be denied without prejudice, and the Court will request further briefing.

## IV. Conclusion

For the foregoing reasons, Samuel's motion to dismiss for lack of personal jurisdiction is denied, and the motion to dismiss for failure to state a claim is denied without prejudice. Henry's motion to dismiss for lack of personal jurisdiction is granted. An appropriate Order follows.